# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **In Re SAV-RX Data Breach Litigation** | **ORDER FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL**<br><br>8:24CV204<br>8:24CV205<br>8:24CV206<br>8:24CV210<br>7:24CV5005<br>8:24CV214<br>8:24CV215<br>8:24CV216<br>4:24CV3109<br>8:24CV218<br>8:24CV228<br>8:24CV229<br>8:24CV261<br>8:24CV264 |

This matter is before the Court on the Coordinated Plaintiffs' Motion for Appointment of Interim Class Counsel (Filing No. 34 in the Lead Case, et al.) and the Amended Application of Brian Paul Thompson of Chicago Consumer Law Center for Appointment to Plaintiffs' Executive or Steering Committee or Other Position (Filing No. 33 in the Lead Case, et al.). Plaintiffs David Prestby, Derek Summerville, Rodney Hill, Heather Krueger, Christine Pennell, Stephanie Foster, Samantha Moser, Tiffany Sutherlin, Shelia Santizo, Shane Sayers, Joann Trussell, Connor Geerhardt, and T.D. (collectively, "Coordinated Plaintiffs") move for the appointment of Courtney E. Maccarone of Levy & Korsinsky, LLP; Terence R. Coates of Markovits, Stock & DeMarco, LLC; Jean S. Martin of Morgan & Morgan Complex Litigation Group; James S. Pizzirusso of Hausfeld LLP; Kate M. Baxter-Kauf of Lockridge Grindal Nauen PLLP; and Charles E. Schaffer of Levin Sedran & Berman LLP (collectively, "Coordinated Plaintiffs' Counsel") to a Plaintiffs' Leadership Committee pursuant to Federal Rule of Civil Procedure 23(g)(3).

Separately, Bryan Paul Thompson of the Chicago Consumer Law Center, P.C., counsel for Plaintiff Doherty, submitted an application (Filing No. 33 in the Lead Case, et al.) for appointment to a Plaintiffs' Executive Committee, Steering Committee, or another leadership

position in the event that the Court creates said committee. The response time for both motions has passed, and no party filed any response to either motion.

Rule 23(g)(3) provides that the court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." When appointing class counsel, interim or otherwise, Rule 23(g)(1)(A) requires the court to consider (1) "the work counsel has done in identifying or investigating potential claims in the action," (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," (3) "counsel's knowledge of the applicable law," and (4) "the resources that counsel will commit to representing the class." The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Manual for Complex Litigation ("The Manual") provides that the court should "ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable." Coordination in Multiparty Litigation—Lead/Liaison Counsel and Committees, Ann. Manual Complex Lit. § 10.22 (4th ed.). "Counsel designated by the court also assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel." *Id*.

Upon review of the Rule 23(g)(3) factors, the Court finds that the now-consolidated actions would benefit from interim class counsel for efficient case management prior to class certification. As demonstrated by their brief and accompanying resumes, Coordinated Plaintiffs' Counsel satisfy the requirements for such appointment by the Court. First, Coordinated Plaintiffs' Counsel have engaged in sufficient identification and investigation regarding the potential claims in this present action by "analyzing the circumstances surrounding the Data Breach, interviewing individuals injured by the Data Breach, researching potential legal claims, drafting initial pleadings and statutory notices, and organizing Plaintiffs and counsel to self-consolidate the actions and move the litigation forward." (Filing No. 35 at p. 3); see *Pulliam v. West Technology Group, LLC*, 8:23-cv-00159-BCB-MDN (Filing No. 14 at p. 2) (granting plaintiffs' motion on account of counsel's "involve[ment] in investigating, prosecuting, and coordinating this litigation, including the preparation and filing of the motion for consolidation.").

Next, as demonstrated by the brief and accompanying resumes, Coordinated Plaintiffs' Counsel are extremely experienced and qualified, and each has knowledge of the applicable law,

experience in managing and prosecuting complex class action cases involving data security and privacy, notable successes against large corporate defendants, and resources they are willing to expend to litigate this case, very briefly highlighted below:

- Ms. Maccarone is a member of Levi & Korsinsky, LLP's Consumer Protection group and has over 12 years of experience, has spent her entire legal career representing consumers, and has litigated a number of data breach and other privacy related class actions in courts in Massachusetts, Iowa, Texas, and California, among others. (Filing No. 35 at p. 5).
- Mr. Coates is managing partner of Markovits, Stock & DeMarco, LLC, and has served as a member of class counsel and/or plaintiffs' counsel in numerous data privacy cases around the country, including courts in Wisconsin, Georgia, North Carolina, Texas, Ohio, and Utah.
- Ms. Martin is a lead attorney in the class action group of Morgan and Morgan has worked on significant data breach class action lawsuits in multiple districts, including *In re Capital One Consumer Data Security Breach Litig.*, No. 1:19-MD-2915-AJT (E.D. Va.), *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 5:16-MD-02752-LHK (N.D. Cal.), *In re Ambry Genetics Data Breach Litig.*, No. 8:20-cv-00791-CJC (C.D. Cal.), and *In re Morgan Stanley Data Sec. Litig.*, 1:20-cv-05914 (S.D.N.Y.), negotiating a $60 million common fund settlement for 15 million class members in the latter.
- Mr. Pizzirusso is a founding partner and Chair of Hausfeld LLP's Data Breach and Privacy practice group. Hausfeld is the only plaintiffs' firm in the country ranked by Legal500 in Cyber Law. In 2024, *Chambers and Partners* ranked Mr. Pizzirusso (for the fourth year in a row) as a top lawyer in "Privacy and Data Security: Litigation." Mr. Pizzirusso and his firm have been recognized as "Trailblazers" in the area of data breach and privacy cases, and has been appointed to leadership positions in data breach class actions by over 27 courts, including in *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 139 (D. Md. 2022) and In re T-Mobile Data Security Breach Litig., MDL No. 4:21-md-03019-BCW (W.D. Mo.).
- Ms. Baxter-Kauf is a partner at Lockridge Grindal Nauen P.L.L.P. and has been appointed as co-lead counsel in multiple class actions on behalf of consumers in data

3

- breach and privacy litigation cases, including as interim co-lead class counsel in *Johnson v. Cornerstone Nat'l Insurance Co.*, No. 22-cv-04135-WJE (W.D. Mo.); *Holmes et al. v. Elephant Insurance Co.*, No. 3:22-cv-00487 (E.D. Va.); and *In re BPS Direct, LLC, and Cabela's, LLC Wiretapping Litig.*, No. 2:23-md-3074 (E.D. Pa.), and to steering or executive committees in several others. Ms. Baxter-Kauf also has experience representing plaintiffs in complex class action matters related to discovery disputes.

- Mr. Schaffer is a partner with Levin Sedran & Berman LLP, where he has practiced for over twenty years. Mr. Schaffer has extensive experience leading complex litigation cases; he has been appointed to twenty leadership positions in various MDLs by various district courts across the nation, has served in over fifty leadership positions in non-MDL complex litigation, and has served in leadership and as class counsel in over thirty-five data breach class actions throughout the country. Mr. Schaffer has focused his practice representing consumers victimized by defective products, data breaches, and unfair or deceptive practices and helped recover "billions" of dollars in compensation over his career. Mr. Schaffer and his team state they have been at the forefront of this litigation and "took a leadership role helping to organize and inform Plaintiffs' counsel, resulting in the proposal of a self-organized Plaintiffs Leadership Committee structure consisting of some of the most experienced data privacy lawyers in the country." (Filing No. 35 at pp. 13-15).

It is apparent that all counsel have knowledge and expertise in the applicable law and have resources at their respective law firms they are willing to expend to litigate these cases. Additionally, Coordinated Plaintiffs' Counsel were among the first to file cases arising out of the data breach at issue, and have been involved in investigating, prosecuting, and coordinating this litigation, including the preparation and filing of this motion and accompanying brief. The plaintiffs' claims all arise out of the same data breach of the defendant's computer network on or about October 3, 2023, which resulted in the unauthorized access of private personal information of approximately 2.8 million individuals. Thus, the potential class size is large and would benefit from experienced management of their claims.

The Court does note that Coordinated Plaintiffs' Counsel are from six separate law firms. A court "must balance desire to create a 'dream team' with several co-lead firms against the

competing considerations of efficiency and economy." *In re Nelnet Servicing, LLC*, 2023 WL 1108253, at *6 (D. Neb. Jan. 30, 2023); see also Manual for Complex Lit. §10.221 (stating the number of attorneys appointed "should not be so large as to defeat the purpose of making such appointments."). Nevertheless, some courts have recognized the benefit of several firms serving as interim co-lead counsel. See *Moehrl v. National Association of Realtors*, 2020 WL 5260511 (N.D. Ill. May 30, 2020); *Bartling v. Apple Inc.*, 2018 WL 4804735 (N.D. Cal. Apr. 27, 2018). Here, Coordinated Plaintiffs' Counsel represent 12 of the 14 related actions. Given the large potential class of affected individuals, and after consideration of the relevant factors under Rule 23(g), the Court finds the appointment of interim co-lead class counsel in this case is appropriate. See also Manual for Complex Lit. § 21.12 (stating that if there are multiple overlapping class action suits, a court may consider designating interim counsel prior to class certification, which "clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.").

In the Coordinated Plaintiffs' Counsel's motion, they request both appointment as "interim class counsel," as well as for the Court to appoint them to a "Leadership Committee." There are meaningful differences between the two. The duty of interim class counsel is to represent the interests of the proposed class fairly and adequately prior to class certification. *See* Fed. R. Civ. P. 23(g)(4). Lead Counsel typically "act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met." Manual for Complex Lit. § 10.221. Committees of counsel[1] "are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making." Manual for Complex Lit. § 10.221. "Committees of counsel can sometimes lead to substantially increased costs, and they should try to avoid unnecessary duplication of efforts and control fees and expenses." *Id.* Courts deny requests for appointment of leadership committees where a plaintiff fails to demonstrate that such an appointment is necessary. See Manual for

---

[1] Referred to as committees of counsel, coordinating committees, management committees, steering committees, executive committees, discovery committees, or trial teams. See Manual for Complex Litig. § 10.221.

Complex Lit. § 10.224 (stating that a leadership committee "should be necessary, not simply the result of a bargain among the attorneys."); see also *In re Nelnet Servicing, LLC*, No. 4:22CV3181, 2023 WL 1108253, at *6 (D. Neb. Jan. 30, 2023) (recognizing viewpoint that "while the attorneys applying for interim class counsel had impressive resumes and considerable experience handling complex class litigation, committees of counsel can lead to increased costs and unnecessary duplication of efforts.").

Coordinated Plaintiffs' Counsel's motion and brief do not specifically explain why a Leadership Committee, as opposed to appointment of interim co-lead counsel, is necessary for the orderly and efficient development of the case, and have not identified differences in jurisdiction, location, or law outside of what is expected in a class action lawsuit. Additionally, Coordinated Plaintiffs' Counsel do not explain the structure of the committee or what the functions of each committee member will be. Finally, as evidenced by Coordinated Plaintiffs' Counsel's own brief, the attorneys for the proposed class have been able to work together efficiently thus far in organizing and developing the action without the necessity of establishing a formal Leadership Committee. However, the Court will not foreclose the creation of a Leadership Committee upon a proper showing at a later date.

Bryan Paul Thompson of the Chicago Consumer Law Center, P.C., counsel for Plaintiff Doherty, separately submitted an application for appointment as a member of a Plaintiffs' Executive Committee, Steering Committee, or other leadership position in the event that the Court creates said committee. Although Mr. Thompson is also qualified counsel with experience in handling class actions, other complex litigation, and the types of claims asserted in these cases, as outlined above, the Court finds that counsel have not established that a Leadership/Steering Committee should be created at this juncture. Mr. Thompson's motion and brief demonstrate he is qualified to be appointed to any such leadership structure, but also does not explain why a larger leadership structure is necessary to begin with. Accordingly, the Court will deny his application, without prejudice.

In sum, the Court finds that appointment of Coordinated Plaintiff's Counsel as interim co-lead class counsel at this juncture is appropriate under Federal Rule of Civil Procedure 23(g). However, the Court will not create a Leadership Committee without a further showing of necessity, information outlining each member's roles and duties within the committee, and any other information justifying its establishment.

**IT IS ORDERED:**

1. The Coordinated Plaintiffs' Motion for Appointment of Interim Class Counsel (Filing No. 34 in the Lead Case, et al.) is granted to the extent it requests appointment of Interim Co-Lead Class Counsel.

2. Courtney E. Maccarone of Levy & Korsinsky, LLP; Terence R. Coates of Markovits, Stock & DeMarco, LLC; Jean S. Martin of Morgan & Morgan Complex Litigation Group; James S. Pizzirusso of Hausfeld LLP; Kate M. Baxter-Kauf of Lockridge Grindal Nauen PLLP; and Charles E. Schaffer of Levin Sedran & Berman LLP are appointed as Interim Co-Lead Class Counsel pursuant to Federal Rule of Civil Procedure 23(g)(3).

3. The Amended Application of Brian Paul Thompson of Chicago Consumer Law Center for Appointment to Plaintiffs' Executive or Steering Committee or Other Position (Filing No. 33 in the Lead Case, et al.) is denied without prejudice.

Dated this 23rd day of October, 2024.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge